## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ERICA SHIELDS,                                          Case No. 1:18-cv-593
      Plaintiff,                                 Cole, J.
                                                        Litkovitz, M.J.

      vs.

SINCLAIR MEDIA III, INC.,                               **REPORT AND**
      Defendant.                                 **RECOMMENDATION**

## I. Introduction

Plaintiff Erica Shields, a resident of Kentucky, brings this pro se action against defendant Sinclair Media III, Inc. (Sinclair), a foreign corporation doing business in Hamilton County, Ohio. Plaintiff claims that Sinclair, her former employer, discriminated against her on the basis of her race, gender, and sexual orientation and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq*. (Title VII) and Ohio law. This matter is before the Court on defendant's motion for summary judgment under Fed. R. Civ. P. 56 (Doc. 46), plaintiff's response in opposition to the motion (Doc. 52), and defendant's reply memorandum (Doc. 53).

## II. Motion for summary judgment

Sinclair moves for summary judgment on each of plaintiff's claims. (Doc. 46). Sinclair denies that plaintiff's discharge was related to her race, gender, or sexual orientation. Sinclair alleges it terminated plaintiff's employment "because she violated Sinclair policy by improperly accessing another employee's email and searching for, printing, and taking a confidential document that she was unauthorized to access." (*Id*. at 2). Sinclair argues that plaintiff cannot produce any evidence to refute the legitimate non-discriminatory and non-retaliatory reason it has proffered for plaintiff's discharge. (*Id*.).

Plaintiff claims that Sinclair's proffered reason is not the true reason for her termination. (Doc. 52).  Plaintiff denies many of defendant's factual allegations; she asserts that she cannot establish certain facts because she lacks knowledge and information that must be acquired through discovery; and she contends the Court must accept on summary judgment all statements she makes in opposition to Sinclair's assertions.  (*Id.*).  Plaintiff has submitted an unsworn "Declaration" in support of her opposing memorandum, which Sinclair challenges as invalid and inadmissible evidence.

## A. Rule 56 standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "[A] party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323. *See also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).  The movant may do so by identifying that the non-moving party lacks evidence to support an essential element of its case.  *See Barnhart v. Pickrel, Shaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1389 (6th Cir. 1993).

Evidence in the record is viewed in the light most favorable to the nonmoving party, with all reasonable inferences drawn to that party's benefit.  *Combs v. Int'l Ins. Co.,* 354 F.3d 568, 576-77 (6th Cir. 2004) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970)).

Summary judgment is appropriate only where the evidence raises no genuine issues of material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

Because plaintiff is a pro se litigant, her filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings"); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers).

### B. Plaintiff's "Declaration"

Plaintiff has submitted a "Declaration" and exhibits in response to defendant's motion. (*See* Doc. 52).  Defendant argues that the declaration and exhibits are not "admissible evidence" that can be considered by the Court on summary judgment pursuant to Fed. R. Civ. P. 56(c)(4). (Doc. 53 at 1-2, citing *Nelson v. Clermont County Veterans Serv. Com'n*, No. 1:11-cv-335, 2013 WL 5934393, at *5 (S.D. Ohio Nov. 1, 2013)).  Defendant contends that the declaration lacks a valid signature as required under 28 U.S.C. § 1746 and S.D. Ohio Civ. R. 83.5.  (*Id*. at 2). Defendant further argues that even if the declaration were signed, the Court cannot consider the declaration to the extent it is based on plaintiff's opinions and beliefs rather than her personal knowledge.  (*Id*.).  In addition, defendant argues that the Court cannot consider the exhibits attached to plaintiff's opposing memorandum because they are not authenticated.  (*Id*. at 3, citing *Saleh v. City of Warren, Ohio*, 86 F. App'x 866, 868 (6th Cir. 2004)).

An affidavit must be sworn to in front of an "officer authorized to administer oaths," but "unsworn declarations under penalty of perjury" may be used with the same force and effect to support, evidence, establish, or prove any matter that is required or permitted to be supported by

an affidavit.   28 U.S.C. § 1746; *Stewart v. Wilkinson*, No. 2:03-cv-0687, 2009 WL 1322307, at

*2 (S.D. Ohio May 8, 2009) (holding that a declaration that was not notarized was admissible for

purposes of summary judgment).   Declarations executed within the United States must

substantially conform to the following language: "I declare (or certify, verify, or state) under

penalty of perjury that the foregoing is true and correct."  28 U.S.C. § 1746(2).   To be valid, an

unsworn declaration must be "signed, in writing, and dated, and must verify that its content is

'true under penalty of perjury.'"  *Tdata Inc. v. Aircraft Tech. Publishers*, No. 2:03-cv-264, 2007

WL 464411, at *3 (S.D. Ohio Feb. 6, 2007) (citing 28 U.S.C. § 1746; *Pollock v. Pollock*, 154

F.3d 601, 612 n.20 (6th Cir. 1998)).  *See also Bailey v. Oakwood Healthcare, Inc.*, No. 15-

11799, 2017 WL 2403573, at *1 (E.D. Mich. June 2, 2017) (§ 1746 permits an unsworn

statement to suffice in place of a sworn statement only if the unsworn statement contains the

signatory's statement that "the contents of the document are true under penalty of perjury, the

declarant's signature, and the date.").

Local Rule 83.5(c) provides that "[t]he actual signature of a Filing User shall be

represented, for ECF purposes, by 's/' followed by the typed name of the attorney or other Filing

User," and a signature of this type "is equivalent to a hand-signed signature for all purposes. . . ."

S.D. Ohio Civ. R. 83.5(c).  A declaration by a non-attorney which contains an electronic

signature instead of the actual signature is not properly signed and therefore is not competent

evidence under Rule 56.  *Tdata*, 2007 WL 464411, at *3 (citing *Vanguard Transp. Sys., Inc. v.

Volvo Trucks N. Am., Inc.,* No. 2:04-cv-889, 2006 WL 2373273, at *6 (S.D. Ohio Aug. 14, 2006)

("non-attorney's electronically signed declaration 'was not properly signed in compliance with

the rules of this District, and will not be considered as evidence under Rule 56'")).  *See also

Malibu Media, LLC v. Doe*, No. 2:14-cv-2404, 2014 WL 12586343, at *2 (S.D. Ohio Dec. 4,

2014) ("non-attorney's electronically signed declaration is not properly signed in compliance with the rules of this District") (citing *Tdata Inc.*, 2007 WL 464411, at *3; *Vanguard Transp. Sys., Inc.*, 2006 WL 2373273, at *6).  *See also* S.D. Ohio Civ. R. 1.1(e) (the Local Rules, "supplemented by the Electronic Filing Policies and Procedures Manual (the 'ECF Manual'), as amended from time to time by the Clerk, govern use of the Electronic Case Filing ('ECF') system in this District"); CM/ECF Procedures Guide § 1.4 (Rev. July 2019) ("In general, the Clerk's Office will scan and file into CM/ECF . . . [o]riginal documents with original signature of a pro se litigant. . . .")[1].

Plaintiff's unsworn declaration does not comply with this Court's Local Rules and 28 U.S.C. § 1746.  The declaration states that plaintiff "swears and affirms under penalty of perjury" that the assertions in her declaration are "true and correct," and the declaration includes the following typewritten text at the end:

"Executed on <u>April 6, 2020</u>    By: <u>Erica Shields</u>"

(Doc. 52 at 2, 4).  The declaration does not include plaintiff's actual handwritten signature as required under § 1746 and S.D. Ohio Civ. R. 83.5.  The declaration therefore is not admissible evidence, and plaintiff cannot rely on the statements in the declaration to oppose defendant's motion for summary judgment.

Even if plaintiff's unsworn declaration included a valid signature, it is not competent evidence to the extent the declaration does not include facts that would be admissible in evidence.  "An affidavit or declaration used to support or oppose a motion [for summary

---

[1] The ECF Manual can be found at https://www.ohsd.uscourts.gov/cm-ecf-button2.

judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *Totman v. Louisville Jefferson County Metro Govt.*, 391 F. App'x 454, 464 (6th Cir. 2010) (citing former Fed. R. Civ. P. 56(e)(1)).[2]  Plaintiff's declaration includes some statements that are based on her firsthand knowledge, but numerous other statements in the declaration are based only on her information and belief.  Statements in the declaration that are based on her information and belief do not comport with the requirement that a supporting affidavit or declaration offered on summary judgment be "made on personal knowledge."  *See Smith v. Doe*, No. 1:14-cv-948, 2017 WL 784670, at *4 (S.D. Ohio Feb. 28, 2017), *report and recommendation adopted,* 2017 WL 1382765 (S.D. Ohio Apr. 18, 2017) (citing former Rule 56(e)).  *See also Totman*, 391 F. App'x at 464 (citing Fed. R. Evid. 602) ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  Plaintiff's statements in her declaration that are "based upon h[er] 'belief'" do not "demonstrate the personal knowledge required by Fed. R. Civ. P. 56[(c)(4)])."  *Totman,* 391 F. App'x at 464 (citing *Alpert v. United States,* 481 F.3d 404, 409 (6th Cir. 2007)).  Further, to the extent plaintiff's declaration is speculation, it is not admissible evidence.  *Totman*, 391 F. App'x at 464.  The Court cannot consider those portions of the declaration that do not comply with the requirements of Rule 56(c)(4).  *See Brautigam v. Damon,* No. 1:11-cv-551, 2015 WL 11018199, at *8 (S.D. Ohio Nov. 17, 2015), *report and recommendation adopted,* 2016 WL 792014 (S.D. Ohio Mar. 1, 2016), *aff'd on other grounds,*

---

[2] Rule 56 has been amended and former subsection (e)(1) is now found at subsection (c)(4).  *See* Advisory Committee Note, Fed. R. Civ. P. 56, 2010 Amendment.

697 F. App'x 844 (6th Cir. 2017) (refusing to consider "portions of the affidavit that do not comply with Fed R. Civ. P. 56(c)(4)," which included "self-serving statements, inferences or opinions not based on observations or other first-hand experiences, mere speculation and conjecture, and inadmissible hearsay.").[3]

Finally, in ruling on a summary judgment motion, the Court cannot consider exhibits that would not be admissible into evidence.  *Saleh,* 86 F. App'x at 868 (holding that exhibits were "not proper evidence for opposing a summary judgment motion because . . . they [were] unauthenticated, and . . . replete with hearsay") (quoting *Wiley v. United States,* 20 F.3d 222, 226 (6th Cir. 1994) (citations omitted)).  Plaintiff's exhibits are not authenticated, and they include statements that are based on information that is not within plaintiff's personal knowledge.  (*See*, *e.g*., Doc. 52 at 3 - "Steve Wilson . . . actually retrieved the document from the printer and showed someone else the document way before [plaintiff] even walked into the room.  He also states they were puzzled and thought the information was confidential. . . .").  The exhibits are not admissible into evidence, and the Court cannot consider the exhibits on summary judgment.

### C.  Facts

The facts summarized below are undisputed except where otherwise noted.

Plaintiff is an African-American female and lesbian who married in June of 2016.  (Doc. 52 at 2).  Sinclair is a company in the business of broadcasting television programs to the public. (Doc. 45-1, Linda O'Brien Declaration, ¶ 3).  Plaintiff started working for Sinclair in September 2016 as a Master Control Operator.  (*Id*., ¶ 4; Doc. 1 at ¶ 12).  Plaintiff's duties were to ensure

---

[3] Even though plaintiff's declaration is not competent evidence, the undersigned nonetheless finds it necessary to include assertions from the declaration in this Report and Recommendation in order to make sense of plaintiff's claims, the factual allegations underlying her claims, and the matters asserted by defendant which she disputes.

the accuracy and quality of audio and video broadcast by the station.  (Plaintiff's Declaration, ¶ 2(A)).  She received a good performance review in May of 2017, including the highest marks possible for "work ethic" and "policies and procedures are consistently followed."  (*Id.*).

Sinclair terminated plaintiff's employment on October 30, 2017.  (O'Brien Decl., Doc. 45-1, ¶¶ 5, 11).  Sinclair asserts that the reason it terminated plaintiff was because she had "(1) accessed another employee's email account when he left a computer without logging out, and (2) searched for and printed a document from such email account containing confidential and personally identifiable information ('PII') about other Sinclair employees."  (*Id.*).  Plaintiff alleges that the employee, Greg Jones, admitted that he left his email and computer open without logging out.  (Doc. 52 at 5, citing O'Brien Decl., Doc. 45-1, ¶ 5 and Doc. 46 at 2-3).   Sinclair acknowledges that Jones "left a computer without logging out"; however, Sinclair conducted an investigation following the incident and learned that plaintiff had to "open the other employee's email inbox, as it was not left on the screen," and she "opened the [email] with the attachment containing the PII. . . ."  (Doc. 46 at 2; O'Brien Decl., Doc. 45-1, ¶¶ 5, 6).  Sinclair learned that after doing so, plaintiff searched through the employee's emails, opened the email with the attachment containing the PII, changed the printer settings to print the document out to a printer in a different area, and printed the confidential document.  (O'Brien Decl., Doc. 45-1, ¶ 7).  Witnesses verified that plaintiff retrieved the document from a printer in a different area of the building.  (*Id.*, ¶ 8).  Plaintiff has never returned the document to Sinclair.  (*Id.*, ¶ 9).

As part of its investigation, Sinclair obtained statements from Greg Jones, the employee whose account plaintiff had accessed, and witnesses who saw plaintiff retrieve the document from the printer.  (*Id.*, ¶ 10).  Sinclair also gave plaintiff an opportunity to provide her version of the incident.  (Kurtis Thelen Declaration, Doc. 45-2, ¶ 6).  Defendant alleges that plaintiff

8

initially denied that she had printed the confidential document, but she then admitted doing so after she was confronted with the other witnesses' accounts. (*Id*., ¶ 7). Sinclair concluded that plaintiff's denial was not credible and that she had violated company policy, and Sinclair terminated plaintiff's employment. (*Id*., ¶¶ 8, 9). Jones, who had been working as an Operations Manager at Sinclair for over 25 years and did not have any prior disciplinary incidents, was formally reprimanded for failing to log out of his computer. (O'Brien Declaration, Doc. 45-1, ¶¶ 12, 13, 14).

Plaintiff denies that she "wrongfully accessed and printed a list of employee names and addresses under another employee [sic] log in information." (Doc. 52, ¶ 2(A)). Plaintiff alleges that even if this were true, "she would not have accessed anything that she could not have gotten out of a phone book." (*Id*.). Plaintiff states:

> The paper was handed to her by another employee, [sic] does not mean it was a paper she actually printed. She stated that she was doing live news when Brian came into the audio booth and asked her to put her time card in on the computer in the audio booth. She made the gesture to let Brian know she seen [sic] where the computer was sitting and hit the mouse by mistake. She admits that she may have clicked out of something that was up and, or accidentally made something print [sic] she is/was unsure if she printed that exact paper out due to the fact that her attention was on the audio she was broadcasting for the live news trying to [sic] focused on her job duties. The other employee which was her union rep Steven Wilson he [sic] is the one who actually retrieved the document from the printer and showed someone else the document way before she even walked into the room. He also states that they were puzzled and thought the information was confidential, but he still handed her the document. She eventually losses [sic] her job due to the fact she took full responsibility for receiving the document from Steven Wilson. . . . She express [sic] she felt like she was being set up because of her complaint. They stated that after being placed on [sic] performance plan and successfully completing it, that any further violations of company policy will subject her to disciplinary actions, up to and including termination of employment.

(*Id*.).

9

Plaintiff alleges that before the computer incident, and shortly after receiving a good performance review in May 2017, supervisor Brian Wedig threatened that her seniority would not protect her from adverse decisions. (Doc. 52, ¶ 2(A)). She asserts that after "being on the job for month's [sic]," she was singled out for "petty and untrue" matters at work. (*Id.*). She alleges that she verbally complained to management and stated she believed she was being "singled out" based on her race and gender because "her peers were not being criticized for petty matters." (*Id.*). Plaintiff contends she was told in response that there was "no proof that her peers were goofing off at work," and there would be an investigation if she could provide proof. (*Id.*). Plaintiff offered to give her two-week notice, which management rejected. (*Id.*). Plaintiff contends she provided video recordings as proof of unprofessional and inappropriate conduct of other employees to Human Resources to support her discrimination complaint. (*Id.*). Plaintiff alleges there was no investigation and instead she was retaliated against and accused of violating company policy for "providing the proof management instructed her to get." (*Id.*). Plaintiff contends she was placed on a performance improvement plan for 30 days for obtaining the videos she provided, which she successfully completed. (*Id.*). Plaintiff alleges she was singled out by management to paint and manually clean ventilation and ceiling ducts, which was not in her job description. (*Id.*).

These allegations appear to refer to a complaint about misbehavior by other Master Control Operators, which defendant's evidence shows plaintiff made on August 16, 2017. (Kristin Swansiger Declaration, Doc. 45-3, ¶¶ 3, 5). Around this same time, in August and September 2017, other Master Control Operators complained that plaintiff was behaving inappropriately. (*Id.*, ¶ 6). Ultimately, plaintiff and three other Master Control Operators were written up for violating company policies in early September 2017. (*Id.*). Sinclair installed

cameras in the Master Control Room on September 21, 2017, after which plaintiff told Regional Human Resources Manager Swansiger that she did not have any further complaints. (*Id.*, ¶ 7).

Plaintiff also complained in August 2017 that her supervisor, Wedig, treated her less favorably and said that he "[did] not care for that life style," knowing that plaintiff is gay. (Swansiger Decl., Doc. 45-3, ¶ 3). Plaintiff claims that Wedig also commented that he did not "want to see it 'in [his] face,'" which was a reference to her sexual orientation. (Doc. 52, ¶ 2(A)). Sinclair investigated plaintiff's complaint at the time. (Swansiger Decl, Doc. 45-3, ¶ 4). Wedig denied making the statement. (*Id.*).

### D. Gender and race discrimination claims (Counts I-IV)

Plaintiff brings claims for discrimination based on her gender and her race in Counts I through IV of the complaint. (Doc. 1, Counts I-IV). Plaintiff alleges in the complaint that she was discriminated against when her supervisor, Wedig, subjected her to "petty criticisms" on unspecified dates. (Doc. 1, ¶ 14). Plaintiff claims that Wedig did not criticize unidentified "white, straight men for legitimate unprofessionalism at work." (*Id.*, ¶ 16). Plaintiff alleges that Sinclair reprimanded her for using her phone to record other employees' misbehavior, which she did to support her discrimination complaint, but Sinclair did not reprimand the unnamed employees she recorded. (*Id.*, ¶ 19). In addition, plaintiff alleges that Sinclair terminated her for allegedly improperly accessing confidential information "via a co-worker's computer station," but Sinclair did not terminate a white, heterosexual male co-worker who was involved in the same computer incident. (*Id.*, ¶ 20).

Defendant contends it is entitled to summary judgment on plaintiff's claims of gender and race discrimination alleged in Counts I through IV. The Court finds that there are no genuine issues of disputed fact as to these claims and that defendant is entitled to summary

judgment as a matter of law on plaintiff's claims of race and gender discrimination raised in Counts I through IV of the complaint.

### 1. *Governing law*

Title VII provides that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race [or] sex. . . ." 42 U.S.C. § 2000e-2(a). Ohio Rev. Code § 4112.02 makes it unlawful for an employer to "discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02. The Ohio courts analyze discrimination claims under Ohio law based on the same standards applicable to claims under federal law. *Fletcher v. U.S. Renal Care*, 709 F. App'x 347, 351 n.1 (6th Cir. 2017) (citing *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 163 (6th Cir. 2004) (citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131-32 (Ohio 1981)). Because the same standards apply, the Court will analyze plaintiff's federal and state discrimination claims together as though all such claims had been brought under Title VII.

To establish a prima facie case of discrimination under Title VII, plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) she was replaced by or treated less favorably than a similarly-situated individual outside the protected class. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008); *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 654-55 (6th Cir. 2015) (citing *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012)). An adverse employment action is a "materially adverse change in the terms and

12

conditions of [plaintiff's] employment." *Smith v. City of Salem, Ohio,* 378 F.3d 566, 575 (6th Cir. 2004) (quoting *Hollins v. Atlantic Co.,* 188 F.3d 652, 662 (6th Cir. 1999)). A "bruised ego," a "mere inconvenience[,] or an alteration of job responsibilities" is not enough to constitute an adverse employment action. *Id*. at 575-76 (citing *White v. Burlington N. & Santa Fe R. Co.,* 364 F.3d 789, 797 (6th Cir. 2004), *aff'd sub nom. Burlington N. and Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006) (quoting *Kocsis v. Multi-Care Mgmt. Inc.,* 97 F.3d 876, 886 (6th Cir. 1996)).

To be considered "similarly situated" for purposes of the fourth prong of the prima facie case, the employment situation of the comparator and plaintiff must be similar "in all relevant aspects." *Romans v. Michigan Dept. of Human Services*, 668 F.3d 826, 837-38 (6th Cir. 2012) (quoting *Highfill v. City of Memphis,* 425 F. App'x 470, 474 (6th Cir. 2011)). In the disciplinary context, plaintiff must also show that the employees with whom she seeks to compare herself "engaged in acts of comparable seriousness." *Martinez v. Cracker Barrel Old Country Store, Inc.,* 703 F.3d 911, 917 (6th Cir. 2013). In making this assessment, the Court must consider factors such as whether plaintiff and the alleged comparators "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (citation and internal quotations omitted).

Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Henry v. Abbott Laboratories*, 651 F. App'x 494, 499 (6th Cir. 2016) (citing *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 240 (6th Cir. 2005)). If the employer satisfies this burden, the burden of production then shifts back to the plaintiff to show that the employer's proffered legitimate, nondiscriminatory reason for the adverse employment action was mere pretext for

intentional discrimination.  *Id.* (citing *White*, 429 F.3d at 238).  Plaintiff may demonstrate
pretext by showing "(1) that the proffered reasons had no basis in fact, (2) that the proffered
reasons did not actually motivate the employer's action, or (3) that they were insufficient to
motivate the employer's action."  *Davis v. City of Clarksville*, 492 F. App'x 572, 580 (6th Cir.
2012) (quoting *Chen v. Dow Chem. Co.,* 580 F.3d 394, 400 (6th Cir. 2009)).  To survive
summary judgment, the plaintiff "must produce sufficient evidence from which a jury could
reasonably reject" the defendant's explanation for the termination.  *Davis*, 492 F. App'x at 580
(quoting *Chen,* 580 F.3d at 400).

### 2. Defendant is entitled to summary judgment on plaintiff's gender and race discrimination claims raised in Counts I-IV of the complaint.[4]

Defendant argues that plaintiff cannot identify any similarly-situated employees outside
the protected class who were treated more favorably than plaintiff.  (Doc. 46 at 6).  Defendant
further argues that even if plaintiff could establish a prima facie case of race or gender
discrimination, defendant has articulated a legitimate, nondiscriminatory reason for her discharge
and plaintiff cannot show that the reason for her discharge was a pretext for discrimination.
(*Id.*).

Plaintiff has not established a prima facie case of gender or race discrimination on the
claims alleged in Counts I through IV of the complaint.  Plaintiff claims that defendant
discriminated against her based on her gender and race by (1) criticizing her for minor work
infractions but not criticizing her co-workers for allegedly unprofessional conduct, and (2)
terminating her employment.  (Doc. 1, Counts I-IV; Doc. 52 at 2, 6).  As to the alleged

---

[4] Plaintiff's claims of gender discrimination and retaliation based on her sexual orientation (Counts V-VI of the
complaint) are addressed in § D(3) *infra*.

discriminatory mistreatment, plaintiff alleges that Wedig criticized her for "petty or untrue work-ethic related infractions," such as not being at her desk "all morning" when she had been away only a few minutes; not turning the lights on in the media control room during operations; and laughing. (Doc. 1, ¶ 14). She claims that defendant did not "criticize white, straight men for legitimate unprofessionalism at work." (*Id.*, ¶ 16). However, plaintiff has not introduced any evidence to show that Wedig's alleged criticism of her for petty work infractions constituted, or resulted in, an adverse employment action. Plaintiff only vaguely alleges that Wedig criticized her for minor work infractions and does not provide any evidence as to the nature and frequency of the criticism. Further, plaintiff does not allege that she was written up or otherwise disciplined in any manner for those alleged infractions. Thus, Wedig's alleged criticism does not satisfy the second element of a prima facie case of race or gender discrimination.

Even assuming plaintiff did suffer an adverse employment action by being "singled out" for criticism by Wedig, plaintiff has not produced any evidence to satisfy the fourth element of her prima facie case. Plaintiff has not identified employees who allegedly engaged in unprofessional work conduct and were not subjected to criticism for their conduct. Her non-specific and unsupported assertions that defendant did not "criticize white . . . men" for unprofessional behavior, and "her peers were not being criticized for petty matters" (Doc. 1, ¶ 16, Doc. 52 at 2, ¶ 2) are insufficient to meet her burden of proof on summary judgment. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment."). Thus, there is no basis for finding that individuals who were allegedly treated more favorably than plaintiff were outside one or both of the protected classes (i.e., that they were non-African-American or male); that they were subject to the same employment standards; and that they dealt

with the same supervisor. *See Martinez*, 703 F.3d at 917. Nor has plaintiff provided evidence to show that she and other employees engaged in comparable conduct for which only plaintiff was criticized. In short, there is not a scintilla of evidence to show that Sinclair treated plaintiff less favorably than unnamed non-African-American or male employees who were similarly situated to plaintiff by subjecting her to criticism for petty and untrue work infractions.

Plaintiff also alleges that Sinclair treated her less favorably than a similarly-situated individual outside the protected class by terminating her employment. Plaintiff seeks to compare her treatment to that of Greg Jones, the employee who failed to log out of his computer and who plaintiff identifies as white and male. However, plaintiff has not shown that she and Jones were similarly situated or that they committed "acts of comparable seriousness." *Martinez,* 703 F.3d at 917. Plaintiff was disciplined for accessing Jones's email account on his computer and printing a confidential document from the account. (O'Brien Declaration, Doc. 45-1, ¶ 12). Jones was formally reprimanded for failing to log out of a computer while away from it. (O'Brien Declaration, Doc. 45-1, ¶¶ 5-7). Jones's failure to log out of a computer and plaintiff's affirmative acts of accessing a co-worker's email account, locating and accessing a confidential document, and printing the confidential document are not infractions of comparable seriousness. *Cf. King v. Enter. Leasing Co. of Detroit*, No. 03-71778, 2007 WL 1806208, at *31 (E.D. Mich. June 21, 2007) (employees' conduct was comparable where both employees engaged in conduct that "was regarded as intentional rather than negligent."). The "qualitative difference in conduct renders futile any attempt to satisfy the 'similarly situated'" element. *Palmer v. Potter*, 97 F. App'x 522, 525 (6th Cir. 2004).

In addition, differences in job title and responsibilities, experience, and disciplinary history may establish that two employees are not similarly situated. *See Leadbetter v. Gilley,*

16

385 F.3d 683, 691 (6th Cir. 2004); *Campbell v. Hamilton County*, 23 F. App'x 318, 325-26 (6th Cir. 2001). *See also Berry v. City of Pontiac*, 269 F. App'x 545, 550 (6th Cir. 2008) (police officers were not similarly situated where there was a "marked contrast" in their discipline records at the time of the disciplinary action; white officer had two prior disciplinary infractions while complaining officer had many). Even when two employees engage in the same conduct (which is not the situation here), "the disparities in the disciplinary records" of the employees may "defeat[] any inference of . . . discrimination that might otherwise arise" from a decision to terminate one employee but not the other. *Hall v. Sky Chefs, Inc.*, 784 F. Supp. 2d 811, 821 (E.D. Mich. 2011) (citing *Russell v. University of Toledo,* 537 F.3d 596, 607-08 (6th Cir. 2008) ("finding that the plaintiff in that case was not similarly situated to co-workers who lacked prior disciplinary records")). Plaintiff and Jones's work records were not comparable with regard to both their length of employment with Sinclair and their disciplinary histories. Plaintiff had been employed by Sinclair for one year and had been disciplined the prior month for performance issues when the computer incident occurred, and Jones was a 25-year employee of Sinclair who had no prior disciplinary record. (O'Brien Declaration, Doc. 45-1, ¶¶ 4, 14; Swansiger Declaration, Doc. 45-3, ¶ 6). Thus, plaintiff cannot establish the fourth prong of her prima facie case by showing she was treated less favorably than Jones, who is not a valid comparator.

Assuming for summary judgment purposes that plaintiff had produced sufficient evidence to establish a prima facie case of race or gender discrimination based on her termination, defendant Sinclair has articulated a legitimate, nondiscriminatory reason for plaintiff's discharge. Defendant states it terminated plaintiff's employment because she violated the company's computer policy "when she improperly accessed another employee's email account and printed a

17

confidential document." (Doc. 46 at 8). Plaintiff challenges defendant's conclusions as factually unsupported. (Doc. 52).

Where the plaintiff alleges there was no basis in fact for the adverse employment action, she cannot establish pretext even if the reason for her discharge was ultimately shown to be incorrect "as long as an employer has an honest belief in its proffered non-discriminatory reason[.]" *Tillman v. Ohio Bell Tel. Co.,* 545 F. App'x 340, 349 (6th Cir. 2013) (quoting *Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1117 (6th Cir. 2001); *Smith v. Chrysler Corp.,* 155 F.3d 799, 806 (6th Cir. 1998) ("[S]o long as the employer honestly believed in the proffered reason given for its employment action, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless.")). *See also Khan v. Canonical USA, Inc.*, No. 3:18-cv-182, 2019 WL 6170806, at *8 (S.D. Ohio Nov. 20, 2019). When the "honest belief" rule is invoked, "the plaintiff must allege more than a dispute over the facts upon which h[er] discharge was based. [S]he must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Tillman*, 545 F. App'x at 349 (quoting *Braithwaite v. Timken Co.,* 258 F.3d 488, 493-94 (6th Cir. 2001) (citing *Smith,* 155 F.3d at 806-07)). To determine whether the defendant had an "honest belief" in the proffered basis for the employee's discharge, the Court examines whether the defendant has established "'reasonable reliance' on the particularized facts that were before it at the time the decision was made." *Id*. (quoting *Abdulnour v. Campbell Soup Supply Co.,* 502 F.3d 496, 502-03 (6th Cir. 2007); *Braithwaite,* 258 F.3d at 494). In making this determination, it is not necessary that the employer's decisional process "be optimal" or that the employer "left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision

before taking an adverse employment action."  *Id.* (quoting *Seeger v. Cincinnati Bell Tel. Co.,* 681 F.3d 274, 285 (6th Cir. 2012) (quoting *Smith,* 155 F.3d at 807)).  It is the employer's burden to identify "the particularized facts that it reasonably relied upon in order to rebut the inference of pretext."  *Davis*, 492 F. App'x at 581 (citing *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 714 (6th Cir. 2007)).

There is no dispute that Sinclair investigated the computer incident.  (O'Brien Decl., Doc. 45-1, ¶ 10).  As part of its investigation, Sinclair obtained statements from Jones and witnesses who saw plaintiff retrieve the confidential document from the printer.  (*Id.*).  Sinclair also gave plaintiff an opportunity to tell her side of the story.  (Kurtis Thelen Decl., Doc. 45-2, ¶ 6).  Sinclair determined that plaintiff's denial of the facts it uncovered in its investigation was not credible and that she had violated company policy.  (*Id.*, ¶¶ 8, 9).  Plaintiff has not alleged any facts or produced any evidence to show that Sinclair lacked an "honest belief" in the conclusion it reached.  Plaintiff relies on nothing more than speculation to raise doubt about Sinclair's conclusion.  Plaintiff alleges that the fact "[t]he [confidential] paper was handed to her by another employee, does not mean it was a paper she actually printed."  (Doc. 52 at ¶ 2(a)).  But plaintiff also admits she may have printed the document when attempting to "put her time card in on the computer in the audio booth."  (*Id.*).  Plaintiff alleges she may have clicked out of the screen that was up on Jones's computer and "accidentally" caused a document to print out by gesturing and mistakenly hitting the mouse, but she is "unsure if she printed that exact paper out" because she was focusing on her job duties at the time.  (*Id.*).  Plaintiff also asserts that another employee retrieved "the document" from the printer "before she even walked into the room," and she "took full responsibility for receiving the document" from the employee.  (*Id.*).  Sinclair could reasonably rely on the sequence of events, the witness statements it obtained, and

plaintiff's lack of a valid explanation to conclude that plaintiff had violated company policy by accessing another employee's computer and email account and printing a confidential document that she was not authorized to access. *Abdulnour*, 502 F.3d at 502-03. The particularized facts upon which Sinclair reasonably relied rebut any alleged inference of pretext in this case.

Plaintiff has not established a prima facie case of discrimination based on her race or gender. She has not shown that defendant treated her less favorably than similarly-situated individuals outside one or both of the protected classes. Further, she has not produced evidence to show that defendant's legitimate, nondiscriminatory reason for terminating her employment was a pretext for race or gender discrimination. Defendant is entitled to summary judgment in its favor on plaintiff's claims of gender and race discrimination raised in Counts I through IV of the complaint.

### 3. *Gender discrimination claims based on sexual orientation (Counts V-VI)*

Plaintiff claims that defendant discriminated against her based on her sexual orientation, and therefore her gender, by treating her less favorably than similarly-situated male employees and terminating her employment. (Doc. 1, Counts V-VI). Plaintiff alleges that defendant discriminated against her because she "engaged in romantic relationships (or desire[d] to engage in romantic relationships) with women" by "treat[ing] [her] substantially worse than men who engage in romantic relationships (or desire to engage in romantic relationships) with women." (*Id*.). Plaintiff also alleges that her supervisor, Brian Wedig, showed "disdain for her sexual orientation" by making comments such as he "did not care for that lifestyle" and he did not "want to see it in [his] face." (*Id*., ¶ 15).[5]

---

[5] Plaintiff also alleged in the complaint that she "reasonably believed Mr. Wedig's pretty criticisms of her stemmed from his biases against homosexuals, and [she] did not see Mr. Wedig or others criticize white, straight men for

Defendant moves for summary judgment on plaintiff's claims of discrimination based on her sexual orientation. (Doc. 46). Defendant alleges that discrimination based on sexual orientation is not actionable under either Title VII or Ohio Rev. Code § 4112.02. (*Id*. at 12).

To date, the Ohio Supreme Court has not found that a claim of discrimination based on "sexual orientation alone" is actionable under Ohio Rev. Code § 4112.02(A). *Inskeep v. W. Res. Transit Auth.*, No. 12 MA 72, 2013 WL 979054, *4 (Ohio App. 7th Dist. March 8, 2013); *see also Burns v. Ohio State Univ. College of Veterinary Med.*, No. 13AP-633, 2014 WL 1317499, *3 n.2 (Ohio App. 10th Dist. March 25, 2014) ("Each appellate district in [Ohio] that has considered such a claim has concluded that the term 'sex' in R.C. 4112.02(A) does not include sexual orientation."). Further, at the time plaintiff filed her complaint and the parties briefed the summary judgment motion, neither the United States Supreme Court nor the United States Court of Appeals for the Sixth Circuit had found that discrimination against individuals based on their sexual orientation violates Title VII. *See Vigil v. STS Sys. Integration, LLC*, No. 3:18-cv-324, 2019 WL 4674562, at *4 (S.D. Ohio Sept. 25, 2019) (citing *Vickers v. Fairfield Med. Cir.*, 453 F.3d 757, 763 (6th Cir. 2006); *Gilbert v. Country Music Ass'n, Inc.*, 432 F. App'x 516 (6th Cir. 2011)). However, the Sixth Circuit had analyzed similar circumstances before plaintiff filed suit and had found that "[s]ex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination" under Title VII. *Smith v. City of Salem*, 378 F.3d 566, 573 (6th Cir. 2004). *See also Equal Empl. Opportunity Commn. v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 572 (6th Cir. 2018), *aff'd sub nom. Bostock v. Clayton County, Georgia*, No.

_____

legitimate unprofessionalism at work." (Doc. 1, ¶ 16). However, plaintiff does not make this allegation in her response to defendant's motion for summary judgment. (Doc. 52). The Court therefore has not considered this allegation, which plaintiff has not produced any evidence to support.

17-1618, 2020 WL 3146686 (U.S. June 15, 2020).  In *Smith*, the Court held that a transgender plaintiff who suffered adverse employment actions after "he began to express a more feminine appearance and manner on a regular basis" had an actionable discrimination claim under Title VII because the "discrimination would not [have] occur[red] but for the victim's sex. . . ."  *Id*. at 572, 574.  The Sixth Circuit in *R.G. &. G.R. Harris Funeral Homes*, 884 F.3d at 572, held that the EEOC could bring a discrimination claim against an employer under Title VII on the ground the employer discriminated against an employee on the basis of "her transgender and transitioning status."

The United States Supreme Court very recently issued its decision in *Bostock*, 2020 WL 3146686, which reviewed a trio of appellate decisions, including *R.G. &. G.R. Harris Funeral Homes, Inc*.  The Court affirmed the holdings in *R.G. &. G.R. Harris Funeral Homes, Inc*. and in one of the other two cases before it.  The Supreme Court held that an employer violates Title VII, which makes it unlawful to discriminate against an individual "because of" the individual's sex, by firing an individual for being homosexual or being a transgender person.  *Bostock*, 2020 WL 3146686, at *3, 18.  Accordingly, plaintiff is entitled to bring a claim under Title VII that her employer discriminated against her because she is a lesbian as she alleges.

Defendant contends that even if there is a recognized claim for sexual orientation discrimination, plaintiff nonetheless has failed to produce evidence to establish the elements of a prima facie case of discrimination under Title VII based on her sexual orientation.  (Doc. 46 at 13).  Plaintiff claims that she was subjected to harassment, and her termination was allegedly motivated by discrimination, based on her sexual orientation.  First, plaintiff alleges that Wedig made comments that showed disdain for her sexual orientation.  (Doc. 52, ¶ 2(A)).  But to be actionable under Title VII, workplace conduct must be "so 'severe or pervasive' as to 'alter the

conditions of [plaintiff's] employment and create an abusive working environment.'" *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998) (quoting in turn *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (some internal quotation marks omitted)). "Workplace conduct is not measured in isolation"; instead, "all the circumstances" must be considered in determining "whether an environment is sufficiently hostile or abusive. . . ." *Id.* (quoting *Faragher*, 524 U.S. at 787-88) (quoting in turn *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). These circumstances include "the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 270-71. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* at 271 (quoting *Faragher*, 524 U.S. at 788) (citation and internal quotation marks omitted)). The isolated comments about her sexual orientation which plaintiff attributes to Wedig were not "so 'severe or pervasive' as to 'alter the conditions of [plaintiff's] employment and create an abusive working environment.'" *Id.* at 270.

Second, plaintiff claims she was discharged based on her sexual orientation. However, plaintiff has not provided evidence to satisfy the fourth element of a prima facie case of discrimination based on her discharge. Plaintiff alleges she was treated less favorably than Greg Jones, the employee whose computer and email she accessed. Plaintiff contends that she and Jones were both involved in the computer incident but whereas Jones was formally reprimanded for failing to log out of his computer, she was discharged for her conduct. (Doc. 52, ¶ 2(A)). For the reasons discussed *supra*, Jones's failure to log out of his computer was not comparable to

the conduct that led to plaintiff's termination.  *See Martinez,* 703 F.3d at 917.

Finally, even if plaintiff were able to establish a prima facie case of discrimination based on her sexual orientation, she has not produced any evidence to show that the reason provided by defendant for her termination was pretextual and that the true reason was discrimination based on her sexual orientation.  Accordingly, defendant is entitled to summary judgment on plaintiff's claims of discrimination based on her sexual orientation.

### E.  Plaintiff's claims of retaliation

Plaintiff claims that defendant retaliated against her for complaining about discrimination based on her race, gender, and sexual orientation.  (Doc. 1, Counts I-VI).  Plaintiff alleges that she "complained about discrimination and harassment ['on the basis of her sexual orientation, and, therefore, her gender'] to members of Defendant's human resources management" and she filed a charge with the Equal Employment Opportunity Commission (EEOC) about her discriminatory treatment.  (*Id.*, ¶¶ 6, 17; Counts I-VI).

Plaintiff apparently made two complaints to Human Resources about alleged discriminatory treatment.  Plaintiff first complained about Wedig criticizing her for "petty and untrue matters at work."  (Doc. 52 at ¶ 2(A)).  Plaintiff alleges that she "verbally complained to management" and stated that "she believed that she was being singled out because of her race and gender because her peers were not being criticized for petty matters."  (Doc. 52, ¶ 2(A)).  Plaintiff alleges that she next complained orally and in writing to Human Resources after Wedig "voiced his disdain for her sexual orientation" by commenting that "he did 'not care for that lifestyle' nor did he want to see it 'in [his] face.'"  (*Id.*).  Plaintiff alleges that Sinclair retaliated against her when she provided proof of discrimination in the form of video recordings of her co-workers, who allegedly were not criticized for "petty matters," by placing her on a performance

improvement plan for 30 days for violating company policy.  (*Id.*).  Plaintiff alleges she was then "singled out by management to do painting and manual[] cleaning of ventilation and ceiling ducts," which was not in her job description.  (*Id.*).  Plaintiff states that Sinclair "was able to resolve the issues when it installed cameras in the Master Control Room. . . ."  (*Id.* at 7).

Defendant Sinclair moves for summary judgment on plaintiff's claims for retaliation based on her race, gender, and sexual orientation.  (Doc. 46).  Defendant alleges that plaintiff cannot establish a prima facie case of retaliation because she did not engage in protected activity related to her race or gender.  (*Id.* at 11).  Instead, she complained only about retaliation for opposing discrimination based on her sexual orientation, which Sinclair alleges neither the Sixth Circuit nor Ohio courts had held to be actionable under Title VII or Ohio law as of the date it moved for summary judgment.  (*Id.*).  Defendant further argues that plaintiff's discharge is not related to any protected activity.  Finally, defendant argues that even if plaintiff could establish a prima facie case of retaliation based on opposition to race or gender discrimination, she cannot rebut the legitimate, non-retaliatory reason Sinclair has offered for her termination.  (*Id.* at 11-12).

Title VII prohibits retaliation against an employee because she has opposed any unlawful employment practice prohibited under Title VII, or because she has made a charge under Title VII.  42 U.S.C. § 2000e-3(a).  Ohio Rev. Code § 4112.01(I) makes it illegal for "any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section. . . ."  The same analytic framework applies to retaliation claims brought under Title VII and Ohio law.  *Blackshear v. Interstate Brands Corp.*, 495 F. App'x 613, 617 (6th Cir. 2012).

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected activity; (2) the defendant knew about the exercise of her protected rights; (3) the defendant took an adverse action ("actions that would dissuade a reasonable worker from making or supporting a charge of discrimination"); and (4) a causal connection existed between the protected activity and such adverse action.  *Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009); *Mickey*, 516 F.3d at 523 (citations omitted).  "[T]he showing required for a Title VII retaliation claim 'is less burdensome than what a plaintiff must demonstrate for a Title VII discrimination claim.'"  *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 570 (6th Cir. 2019) (quoting *Rogers v. Henry Ford Health System*, 897 F.3d 763, 776 (6th Cir. 2018)).  A plaintiff who claims retaliation under Title VII need only show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 569-70 (quoting *Burlington*, 548 U.S. at 68) (citations and internal quotation marks omitted).  Thus, "more frequent disciplinary writeups of plaintiff for trivial matters and unwarranted criticism of plaintiff's work" have been held to be "sufficient, '[w]hen viewed as a whole,' to 'support the jury's finding that defendants retaliated against plaintiff.'"  *Id*. (quoting *Moore v. Kuka Welding Sys.,* 171 F.3d 1073, 1080 (6th Cir. 1999)).  Similarly, being subjected to unjustified disciplinary writeups which eventually led to the plaintiff's termination may suffice to support a finding of retaliation.  *Id*.

To show a causal connection exists between an employee's protected activity and an adverse employment action, the plaintiff must demonstrate that the "desire to retaliate was the but-for cause of the challenged employment action."  *Henry*, 651 F. App'x at 505 (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013)).  "Although no one factor is

dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Id*. (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

Opposing conduct that satisfies the first element of a retaliation claim includes complaining to management "about allegedly unlawful practices . . . ." *Johnson v. University of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).  The plaintiff must have a reasonable, good faith belief that the defendant has committed an unlawful employment practice to state a claim for retaliation.  *Yazdian*, 793 F.3d at 646.  *See also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001).  The reasonable, good faith belief requirement has subjective and objective components.  The subjective component requires that the employee complaining of an alleged unlawful employment practice "must 'actually believe[] that the conduct complained of constituted a violation of relevant law.'" *Yazdian*, 793 F.3d at 646 (quoting *Rhinehimer v. U.S. Bancorp Invs., Inc.,* 787 F.3d 797, 811 (6th Cir. 2015)).  The objective component requires that "'a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee' would believe that the conduct complained of was unlawful." *Id*. Objective reasonableness is decided as a matter of law "only when no reasonable person could have believed that the facts known to the employee amounted to a violation or otherwise justified the employee's belief that illegal conduct was occurring." *Id*.

Plaintiff has failed to produce evidence of a prima facie case of retaliation.  First, there is no evidence that plaintiff engaged in protected conduct.  Plaintiff has not offered any evidence of a "reasonable, good faith" belief that she was treated differently than non-African-American or male employees because of her race or gender.  Plaintiff allegedly complained she was "being

singled out because of her race and gender because her peers were not being criticized for petty matters." (Doc. 52 at 2). However, as discussed *supra*, plaintiff offers no evidence to support her complaint that she was treated less favorably than similarly-situated co-workers who engaged in comparable conduct. Plaintiff also vaguely alleges that she was "set up" and "treated more harshly than her white, male, straight, peers who did not complain about discrimination." (*Id.* at 4). However, she does not explain how she was "set up," and she has failed to identify the "white, male, straight, peers" who allegedly were similarly situated to her. (*Id.*). Finally, plaintiff alleges she complained about Wedig's comments that showed disdain for her sexual orientation. But for the reasons discussed *supra*, no reasonable person would believe that the isolated comments plaintiff attributed to Wedig were "so 'severe or pervasive' as to 'alter the conditions of [plaintiff's] employment and create an abusive working environment.'" *Clark County Sch. Dist.,* 532 U.S. at 270.

In addition, plaintiff has not drawn a causal connection between complaints of discrimination and an adverse employment action. To the contrary, plaintiff alleges that Sinclair twice rejected her offers to resign, which she made after complaining about being criticized for petty matters and after complaining about Wedig's comments. (Doc. 52 at 2-3). Plaintiff also alleges that issues she had complained about were resolved after Sinclair installed cameras in the Master Control Room. (Doc. 52 at 7). Plaintiff does not tie her complaints or any other protected activity to an adverse employment action, whether it be her placement on a 30-day performance improvement plan for video recording co-workers while on the clock, which she successfully completed; being assigned to manually clean ventilation and ceiling ducts; or her termination. For these reasons, defendant is entitled to summary judgment on plaintiff's retaliation claims.

### F.  Plaintiff's Public Policy Claim

Plaintiff alleges in Count VII of the complaint that her employment termination was contrary to Ohio public policy.  (Doc. 1).  Defendant moves for summary judgment on plaintiff's Ohio public policy tort claim.  (Doc. 46 at 14-17).  Defendant alleges that plaintiff is not entitled to pursue this claim because she cannot establish the first two elements of a claim for wrongful termination in violation of Ohio public policy: (1) "a clear public policy that Ohio courts seek to protect through an exception to Ohio's employment at-will doctrine," and (2) that her dismissal jeopardizes a clear public policy.  (*Id*. at 14).

Plaintiff has not addressed her public policy tort claim in response to defendant's motion for summary judgment and shown that there is a genuine issue of material fact on the claim. (Doc. 52).  Further, defendant is clearly entitled to summary judgment as a matter of law on this claim.  The elements of the tort of wrongful discharge in violation of Ohio public policy are: (1) that a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).  *See v. Cleveland Clinic Found.,* 222 F. Supp. 3d 569, 574 (N.D. Ohio 2016) (citing *Leininger v. Pioneer Natl. Latex*, 875 N.E.2d 36, 39-40 (Ohio 2007)).  In order to prove the jeopardy element, a plaintiff must show that a clear policy would be compromised absent a common law tort claim. *Leininger*, 875 N.E.2d at 41.

Ohio Rev. Code Ch. 4112 provides an adequate remedy for race and gender discrimination and retaliation, so that a common law wrongful discharge claim for violating the public policy established by Chapter 4112 does not exist. *Farrell v. Tipp Mach. & Tool, Inc.*, No. 3:02-cv-418, 2005 WL 2372857, at *10 (S.D. Ohio Sept. 26, 2005) (collecting cases). Further, assuming Ohio has a clear policy against discrimination and retaliation based on sexual orientation, for which Chapter 4112 does not provide a remedy, other elements of a public policy tort are not met as to this claim. Plaintiff has not introduced evidence to show that her discharge was motivated by her sexual orientation, and there is no evidence that Sinclair lacked "an overriding legitimate business justification" for her dismissal. *See Cleveland Clinic Found.*, 222 F. Supp. 3d at 574. Accordingly, defendant is entitled to summary judgment on plaintiff's public policy claim.

## III. Defendant is entitled to summary judgment

Defendant Sinclair has established that there are no genuine issues of material fact and that it is entitled to summary judgment as a matter of law on plaintiff's claims of discrimination, retaliation, and violation of Ohio public policy. The Court should therefore grant defendant's motion and issue summary judgment in defendant's favor.

### IT IS THEREFORE RECOMMENDED THAT:

Defendant's motion for summary judgment under Fed. R. Civ. P. 56 (Doc. 46) be **GRANTED.**

Date: __June 22, 2020__

Karen L. Litkovitz
United States Magistrate Judge

30

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ERICA SHIELDS,                                   Case No. 1:18-cv-593
     Plaintiff,                                Cole, J.
                                                Litkovitz, M.J.

     vs.


SINCLAIR MEDIA III, INC. ,                       **REPORT AND**
     Defendant                                 **RECOMMENDATION**
     .

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).