UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ERICA SHIELDS,

      Plaintiff,

v.

SINCLAIR MEDIA III, INC.,

      Defendant.

Case No. 1:18-cv-593
**JUDGE DOUGLAS R. COLE**
Magistrate Judge Litkovitz

## OPINION AND ORDER

This cause comes before the Court on Magistrate Judge Litkovitz's June 23, 2020 Report and Recommendation ("R&R") (Doc. 54), which recommends that this Court grant Defendant Sinclair Media III, Inc.'s ("Sinclair") Motion for Summary Judgment (Doc. 46). Plaintiff Erica Shields objected to the R&R. (*See* Doc. 55).

For the reasons stated more fully below, the Court **OVERRULES** Shields' Objection (Doc. 55) and **ADOPTS** the R&R (Doc. 54). As a result, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 46), thereby **DISMISSING** this action **WITH PREJUDICE**.

## BACKGROUND

Sinclair is a media company that broadcasts television programs to the public. (R&R, Doc. 54, #284). Shields is an African-American lesbian woman who worked for Sinclair for a little over one year beginning in September 2016. (*Id.*). Shields worked as a Master Control Operator responsible for accuracy and quality of audio and video broadcast by the station. (*Id.* at #284–85). Shields received a good performance review in May 2017. (*Id.* at #285). But Shields' relations with Sinclair apparently began to

sour sometime around August 2017. On one hand, Shields complained to management that she was "singled out" for criticisms of her work, which she attributed to her race, gender, and sexual orientation. (*Id.* at #287). Shields also complained that her supervisor, Brian Wedig, stated in reference to Shields' sexual orientation that he did not care for "that lifestyle." (*Id.* at #288). On the other hand, fellow Master Control Operators complained that Shields was behaving inappropriately, although the record lacks specificity about the content of these complaints. (*Id.* at #287; Swansiger Decl., Doc. 45-3, ¶ 6, #114). Sinclair disciplined Shields and three other Master Control Operators in September 2017 for violating company policies. (R&R at #287).

Shields' time at Sinclair took a further turn for the worse after an incident in which Sinclair maintains that Shields accessed the email account of another employee, Greg Jones, without Jones' permission, and printed a confidential document to which she should not have had access. (*Id.* at #285). Sinclair investigated the incident, obtaining statements from Jones, Shields, and witnesses who saw Shields take the document from the printer. (*Id.*). Shields admits that she may have printed the document from Jones' email but maintains that she did so inadvertently and that another employee was the one who retrieved it from the printer. (*Id.* at #286). In any event, Sinclair fired Shields on October 30, 2017. (*Id.* at #285). Sinclair also reprimanded, but did not fire, Greg Jones for failing to log out of his email.

Shields initiated this action on August 22, 2018, when she filed a Complaint (Doc. 1) alleging that Sinclair discriminated against her on the basis of her race,

gender, and sexual orientation in violation of Title VII of the Civil Rights Act and Ohio Revised Code Section 4112.[1] (Compl., Doc. 1). Shields claims that Sinclair singled her out for criticism and hostile comments and eventually terminated her because she is a gay African-American woman. (*Id.* at ¶ 11, 14, 20, #2–3).

Sinclair moved for summary judgment on March 3, 2020, saying it terminated Shields not because of any protected characteristic, but instead because of Shields' role in the email incident described above. (Def. Mot. for Summ. J., Doc. 46, #117). Shields responded in opposition on April 7, 2020, attaching a "Declaration" and various purported exhibits in support of her account of discrimination. (Pl. Resp. in Opp., Docs. 52, 52-1). Exhibits included a decision of Ohio's Unemployment Compensation Review Commission, numerous emails between Shields and other Sinclair employees regarding her disciplinary history, and various photographs that may depict the workplace at Sinclair and Shields and other employees present there. (Pl. Resp. in Opp., Doc. 52-1). Some of these documents also contain handwritten annotations by Shields. Sinclair replied on April 20, 2020, reiterating Sinclair's position that Shields had not presented evidence sufficient to create a genuine dispute of material fact as to her discrimination claims, and also arguing that Shields' "Declaration" and exhibits were not admissible for consideration on the summary judgment record. (Def. Repl. in Supp. of Mot. for Summ. J., Doc. 53, #269).

Magistrate Judge Litkovitz's R&R (Doc. 54), dated June 22, 2020, but docketed June 23, 2020, addressed Sinclair's Motion for Summary Judgment (Doc. 46). The

---

[1] Shields was originally represented by counsel in this action but is now proceeding pro se.

R&R recommends that this Court grant Sinclair's motion. First, the R&R finds that Shields's "Declaration" cannot be considered as evidence on the summary judgment record because it does not comport with 28 U.S.C. § 1746 and the Court's local rules. (R&R, Doc. 54, #282). Specifically, the R&R finds that, as a non-attorney, Shields was required to provide her handwritten signature for the Declaration, which Shields failed to do. (*Id.*). Separately, the R&R finds that Shields's Declaration contains numerous statements that cannot be considered as part of the summary judgment record because they are not based on Shields' personal knowledge. (*Id.* at #283). The R&R likewise concludes that the exhibits attached to Shields' reply cannot be considered on summary judgment because they are not authenticated and they include statements by Shields based on information not within her personal knowledge. (*Id.* at #284).

Regarding Shields' race- and gender-based discrimination claims, the R&R concludes that Shields fails to offer sufficient evidence to create a genuine dispute of material fact. (*Id.* at #288). With respect to Shields' allegations that Sinclair management singled her out for critical comments because of her race and gender, the R&R notes that Shields offers little specificity concerning the content or frequency of criticism, nor does Shields offer any evidence that Sinclair took disciplinary action against her in connection with these criticisms of her work as opposed to her other behavior. (*Id.* at #292). Therefore, the Magistrate Judge concludes that Shields does not offer sufficient evidence to create a genuine dispute of material fact as to whether the criticisms constituted an adverse action, a necessary element of a Title VII

4

disparate treatment plaintiff's prima facie case. (*Id.*). In further support of this conclusion, the Magistrate Judge observes that Shields also fails to offer any evidence beyond Shields' own vague allegations that otherwise similarly situated employees of a different race or gender (e.g., white men) were treated differently from Shields, also a necessary element of her prima facie case. (*Id.*). For these reasons, the R&R concludes that Shields fails to create a genuine dispute of material fact with respect to her Title VII disparate treatment claims based on comments critical of her work. (*Id.*).

Turning to Shields' termination, undoubtedly an adverse action, the R&R again finds that Shields fails to offer sufficient evidence to create a genuine dispute of material fact as to whether she was treated differently from an otherwise similarly situated employee of a different race or gender. (*Id.* at #293). The R&R notes Shields' attempt to contrast her own termination with Sinclair's failure to terminate Greg Jones, the employee who had not logged out of the email account that Shields accessed and whom Shields identifies as a white man. (*Id.*). But the Magistrate Judge concludes that Shields offers no evidence that establishes that Jones' *inadvertent* failure to log off from his email was of a similar seriousness as Shields' *intentional* conduct. (*Id.*). The R&R further notes that Jones and Shields were not similarly situated given Jones' 25-year history with Sinclair by contrast to Shields' one year of employment. (*Id.* at #294).

Moreover, even assuming Shields had established a prima facie case for Title VII racial or gender discrimination with respect to her termination, the R&R finds

5

that Sinclair articulates a legitimate, nondiscriminatory reason for firing her, namely Shields' violation of the company's computer policy when she accessed Greg Jones' email without permission and printed a confidential document. (*Id.*). The Magistrate Judge notes that a Title VII plaintiff can only establish that an employer's stated reason for an adverse action is pretextual if the employer did not have an "honest belief" in its proffered reason as the real reason for the adverse action. (*Id.* at #295). The R&R finds that Shields fails to present any evidence that Sinclair lacked an honest belief that Shields' firing was due to Shields' violation of the computer policy rather than her race or gender. (*Id.*). The Magistrate Judge also notes that Sinclair had, by all accounts, investigated the computer incident, given Shields an opportunity to respond, and fired Shields soon afterward, all facts strengthening Sinclair's argument that it fired Shields because of her violation of the computer policy rather than because of Shields' race or gender. (*Id.*). For these reasons, the R&R concludes that Shields fails to create a genuine dispute of material fact regarding her Title VII racial and gender discrimination claims arising out of her termination.

The R&R next turns to Shields' sexual orientation discrimination claims. Briefing on the R&R had taken place before the Supreme Court decided in *Bostock v. Clayton County* that sexual orientation discrimination is actionable sex discrimination under Title VII. 140 S. Ct. 1731 (2020). However, that case had been very recently decided at the time of the R&R itself. Thus, the R&R rejects Sinclair's argument that Title VII does not permit Shields' claim of discrimination based on sexual orientation. (R&R, Doc. 54, #299).

Otherwise, though, the R&R's analysis of Shields' claims of discrimination based on sexual orientation largely tracks the R&R's analysis of Shields' other discrimination claims. Regarding Shields' theory of discrimination based on Wedig's alleged comments referencing her sexual orientation, the Magistrate Judge concludes that these were at most isolated incidents that did not amount to an adverse action or create a hostile work environment under Title VII. (*Id.* at #300). And regarding Shields' termination, the Magistrate Judge again finds that Shields puts forth no evidence that she was treated less favorably than a similarly situated employee who did not share her sexual orientation, again rejecting Shields' attempt to contrast her termination to Sinclair's failure to terminate Jones. (*Id.*). And again, even if Shields could make out a prima facie case of discrimination, the R&R notes that she has produced no evidence that Sinclair's stated reason for terminating her was pretextual. (*Id.* at #301). Thus, Shields fails to create a genuine dispute of material fact as to her sexual orientation discrimination claims. (*Id.*).

Next, the Magistrate Judge addresses Shields' claim that Sinclair retaliated against her for complaining about discrimination in violation of Title VII. The R&R rejects this claim for two reasons. First, Shields does not point to any evidence that Shields had a "reasonable, good faith belief" that she was being discriminated against when she complained to human resources at Sinclair or filed a charge with the Equal Employment Opportunity Commission. (*Id.* at #304). Second, Shields does not point to evidence sufficient to create a genuine dispute as to whether her termination was in response to her complaints of discrimination rather than her violation of the

7

computer policy as Sinclair maintains. (*Id.* at #304). For these reasons, and as before, the Magistrate Judge concludes that Shields fails to create a genuine dispute of material fact as to her retaliation claims. (*Id.*).

The R&R then turns to Shields' claim that Sinclair's termination of her was a wrongful discharge in violation of Ohio public policy. Here, the R&R notes that because Ohio Revised Code Chapter 4112 provides an adequate remedy for race and gender discrimination, there is no common law remedy for violation of the public policy embodied in that statute. (*Id.* at #307). Thus, the R&R concludes that Shields' wrongful discharge claim based on race or gender fails as a matter of law. (*Id.*). And even assuming an Ohio public policy against sexual orientation discrimination for which Ohio's antidiscrimination statute did not provide an adequate remedy, the R&R reiterates that Shields fails to put forth evidence to show that her termination was motivated by her sexual orientation. (*Id.*). Thus, Shields fails to create a genuine dispute of material fact as to her wrongful discharge claim based on sexual orientation.

For these reasons, the R&R recommends that Sinclair's Motion for Summary Judgment (Doc. 46) be granted in its entirety. (*Id.*).

On July 8, 2020, Shields filed a purported Objection to Magistrate Judge Litkovitz's Report and Recommendations. (Doc. 55). This document has two parts: another "Declaration," this time with a handwritten signature, once again recounting Shields' factual narrative of events out of which her discrimination claims arise, (*Id.* at #370–73), and a Memorandum of Points and Authorities (*Id.* at #374–89). In turn,

8

the Memorandum has three sections: a "Statement of Facts" that runs roughly fifteen pages, a one-paragraph "Standard for Report and Recommendation," and a one-paragraph "Argument" section. On closer examination, though, the Statement of Facts, and thus the great bulk of the Memorandum, consists largely of uncited sentences taken more or less verbatim from Magistrate Judge Litkovitz's R&R or from Sinclair's Motion for Summary Judgment or Reply with the words "Plaintiff objects to" or "Plaintiff objects to Sinclair argue that" in front of them. For example:

> Plaintiff objects to Sinclair argue in ruling on a summary judgment motion, the Court cannot consider exhibits that would not be admissible into evidence. Plaintiff objects to Sinclair argue that exhibits were "not proper evidence for opposing a summary judgment because they were unauthenticated and replete with hearsay.") Plaintiff objects to Sinclair argue that plaintiff's exhibits are not authenticated, and they include statements that are based on information that is not within plaintiff's personal knowledge. (*Id.* at #376; *compare* R&R, Doc. 54, #284).

The one-paragraph "Argument" section reads in full as follows:

> In the present case, there is a genuine issue of material fact, specifically: The elements of plaintiff's claims or as followed 1.)After being on the job for month's supervisor Briand Wedig threatened, that her seniority would not protect her from adverse decisions. 2.) Mr. Wedig voiced his disdain for her sexual orientation. Making a commit that he did "not care for that lifestyle" nor did he want to see it "In his face". Mrs. Shields complained verbally and in writing to management. 3.) Other employees engaged in unprofessional & inappropriate conduct. 4.) Erica was singled out to paint and manually clean dirty ventilation and ceiling ducts not in her job description. 5.) Erica was placed on performance improvement plan for video management asked for. 6.) Erica was wrongfully accessing and printing list of employee names, and addresses under a co-workers log in information. 7.) White males repeatedly committed offenses and were not fired. As one example is the co-worker who claim he left out the room and did not log off the computer. The facts the moving party uses to support the elements of its claim are actually still in dispute. As you can find facts of that in Exhibits 1-4, and (Shields Complaint at PageID 2, Doc. 1; Doc. 45-1 at Page ID 108 page 2). (Doc.46 at PageID117). (Page 1 , Doc. 51 at PageID 200). (Page 3,

9

> Doc. 11 at PageID 35; Page 3, Doc. 1 at PageID3). Disputes like there was no race and gender retaliation. Fact that in Exhibit 4 you will find pictures of me doing ventilation cleaning days after compliant was made with management.

(Pl. Obj., Doc. 55, at #389).

Sinclair responded to Shields' purported Objection on July 21, 2020. (Doc. 56). Sinclair argues that Shields fails to properly object to any portion of Magistrate Judge Litkovitz's report. (*Id.* at #431). Sinclair also reiterates the arguments in support of its Motion for Summary Judgment originally made to the Magistrate Judge. (*See generally id.*). Finally, Sinclair argues that the Court should not consider the new "Declaration" Shields submitted along with her purported Objection to the R&R because this would improperly allow Shields to supplement the record with new evidence in violation of Federal Rule of Civil Procedure 56. (*Id.* at #433). Shields did not reply in support of her Objection.

## LEGAL STANDARD

Under Fed. R. Civ. P. 72(b)(3), district courts review an R&R de novo after a party files a timely objection. This review, however, applies only to "any portion to which a proper objection was made." *Richards v. Colvin*, No. 2:12-cv-748, 2013 WL 5487045, at *1 (S.D. Ohio Sept. 30, 2013). In response to such an objection, "[t]he district court 'may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.'" *Id.* (quoting Fed. R. Civ. P. 72(b)(3)). However, a general objection "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *Boyd v. United States*, No. 1:16-cv-802, 2017 WL 680634, at

10

\*1 (S.D. Ohio Feb. 21, 2017). That is, a litigant must identify each issue in the R&R to which she objects with sufficient clarity that the Court can identify it, or else that issue is deemed waived. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

That being said, here, the petitioner is proceeding pro se. A pro se litigant's pleadings are to be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). At the same time, pro se litigants must still comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

The R&R at issues here addresses a motion for summary judgment. On that front, "[t]he 'party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *See, e.g.*, *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at \*3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). But the non-moving party cannot defeat a motion for summary judgment merely by pointing to any factual dispute. As the Sixth Circuit has explained, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d

11

690, 697 (6th Cir. 2020) (bracket omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

## LAW AND ANALYSIS

Sinclair argues that Shields has failed to properly object to any portion of the R&R. The Court agrees. Despite the length of her purported Objection, no part of it clearly identifies any specific portion of the R&R to which Shields objects or any specific error by the Magistrate Judge.

Start with Shields' "Declaration." As Sinclair notes, it is an untimely attempt to supplement the summary judgment record after the R&R already had issued and months after the deadline for Shields' response to Sinclair's motion. But even if it were not, Shields' purported "Declaration" does not even refer to the R&R, much less point to any specific error in the determination of any particular issue to which Shields objects. Instead, Shields' Declaration once again rehashes Shields' version of the events that led to her termination at Sinclair. Moreover, no other section of Shields' purported Objection draws any connection between the facts presented in the Declaration and any specific portion of the Magistrate Judge's R&R or any alleged error therein. Thus, even if Shields' "Declaration" were properly part of the record at this stage of the proceedings, which it is not, it would do nothing to establish a proper objection to the R&R.

The Statement of Facts in Shields' Memorandum of Points and Authorities, which comprises most of her purported Objection, fares little better. As an initial matter, Shields frames most of her voluminous purported objections as objections to

*Sinclair*'s arguments rather than to the R&R. That is a problem because a litigant is required to object to the R&R, and not merely rehash arguments already made against the opposing party's motion. *See Richards*, 2013 WL 5487045, at *1 (finding no proper objection where plaintiff only repeated the same arguments made in earlier briefing rather than identifying specific errors in the R&R). By attempting once again to rebut Sinclair's arguments, rather than addressing her objections squarely to the R&R, Shields fails to properly object to the R&R.

The more fundamental problem with Shields' Statement of Facts, though, relates to its very verbosity. By placing the phrases "Plaintiff objects to" or "Plaintiff objects to Sinclair argue that" in front of literally dozens of sentences from the R&R, or from Sinclair's briefing, with little or no further elaboration, Shields in effect objects generally to the R&R rather than identifying any specific error or errors contained therein. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) (general objection equivalent to failure to object at all). It is just as if Shields had filed an Objection consisting of the R&R itself with every sentence crossed out. Moreover, the relatively few sentences in the Statement of Facts that do not consist of pasting "Plaintiff objects to" or "Plaintiff objects to Sinclair argue that" in front of pre-existing sentences from the R&R or Sinclair's briefing merely rehash Shields' factual allegations rather than referring to the R&R at all, much less any specific portion of, or alleged error in, the R&R. Other sentences offer mere conclusory assertions such as "The employer's explanation is inaccurate and is masking the employer's true discriminatory motive." (*Id.* at #376). It should be emphasized that

13

nowhere in her Statement of Facts does Shields even purport to identify any specific factual or legal error in the R&R, much less present any argument or legal authority in support of any such objection.

Perhaps the closest Shields comes concerns the "Declaration" she attached to her response to Sinclair's original motion for summary judgment: "Due to global pandemic plaintiff electronically signed both Declaration and Memorandum. Plaintiff asks the courts for an oral argument on this matter of unsworn Declaration and Sinclair challenge of invalid and inadmissible evidence." (*Id.* at #374–75). While Shields requests oral argument with respect to a more or less identifiable legal issue, namely the validity of her electronic signature on the Declaration attached to her Response to Sinclair's Motion for Summary Judgment, Shields does not mention the R&R's specific conclusions regarding the inadmissibility of the Declaration or their bases, and therefore does not offer any reason to conclude that the R&R erred in excluding it. Shields also fails to argue that the disposition of Sinclair's Motion for Summary Judgment would have been different even if the Magistrate Judge had considered her Declaration as part of the record. Thus, Shields fails to properly object to the Magistrate Judge's exclusion of her Declaration from the summary judgment record. (To be clear, because Shields has failed to properly object to the R&R, oral argument on that issue is not necessary or appropriate.)

In sum, Shields' Statement of Facts, which comprises the bulk of her purported Objection, consists entirely of what are effectively general objections, conclusory assertions, and factual allegations not addressed with any specificity to the R&R.

14

That is not a proper objection under Fed. R. Civ. P. 72, even by the lax standards that apply to pro se litigants.

That leaves Shields' brief "Standard for Report and Recommendation" and "Argument" sections. The former only indicates the general standard for review of a Magistrate Judge's Report and Recommendations. The latter section, reproduced in full above, is like the new "Declaration" insofar as it only rehashes some of Shields' factual allegations. Neither objects to, nor even refers to, any portion of the R&R. Thus, once again Shields has failed to properly object to the R&R.

Because of Shields' failure to properly object to any portion of the R&R, the Court at most reviews the R&R for a "clear error on [its] face." (*See* Advisory Committee notes to Fed. R. Civ. P. 72). The Court discerns no such error. Indeed, the Court doubts that even de novo review of the material portions of the R&R (which, to be clear, the Court does not conduct) would lead to a different result in this case. Shields' central problem appears to be her inability to put forward any competent evidence that Sinclair fired her because of her race, gender, or sexual orientation, as opposed to her admitted violation of Sinclair's computer policy. Because Shields' conclusory and self-serving allegations about Sinclair's real reasons for firing her lack any apparent basis in her personal knowledge, they are not competent evidence in support of her discrimination claims, whether they are contained in a "Declaration" or anywhere else. And Shields marshals little in support of her core claims regarding

Sinclair's motives for terminating her apart from such statements. Thus, it is unlikely at best that even de novo review would lead to a different result in this case.

## CONCLUSION

For the reasons set forth above, the Court **OVERRULES** Shields' Objection (Doc. 55), and thus **ADOPTS** the R&R (Doc. 54). Accordingly, the Court **GRANTS** Sinclair's Motion for Summary Judgment (Doc. 46). As a result, the Court **DISMISSES** this action **WITH PREJUDICE**. The Court further **DIRECTS** the Clerk to **ENTER JUDGMENT** in Sinclair's favor, and terminate this matter on the Court's docket.

**SO ORDERED.**

September 30, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**